853 F.2d 805
 26 Fed. R. Evid. Serv. 718
 O. George SPECHT, Jr., and June B. Specht, Plaintiffs-Appellees,
v.
Roger JENSEN, Doug Martin, and Don Owens, Defendants-Appellants,
and
Pat Tellier and Ken Jacobs, Defendants.
O. George SPECHT, Jr., and June B. Specht, Plaintiffs-Appellants,
v.
Roger JENSEN, Doug Martin, Don Owens, Pat Tellier, and Ken
Jacobs, Defendants-Appellees.
 Nos. 85-1457, 85-1533.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 3, 1988.
 
 Arthur H. Bosworth, II, (Michael J. Peterson, with him on the brief), of Bosworth & Slivka, Denver, Colo., for plaintiffs-appellees.
 Theodore S. Halaby (Robert Mark Liechty, with him on the briefs), of Halaby & McCrea, Denver, Colo., for defendant-appellant Jensen.
 Before HOLLOWAY, Chief Judge, and McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK and BRORBY, Circuit Judges.ON REHEARING EN BANC
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This case is before the court for rehearing en banc of one issue; in all other respects the panel opinion[1] stands. The question considered is whether Fed.R.Evid. 702 will permit an attorney, called as an expert witness, to state his views of the law which governs the verdict and opine whether defendants' conduct violated that law. We conclude the testimony was beyond the scope of the rule and thus inadmissible.
 
 I.
 
 2
 This case is an action for damages pursuant to 42 U.S.C. Sec. 1983 grounded upon allegedly invalid searches of the plaintiffs' home and office. The underlying facts are set forth in the panel opinion and need not be restated here.[2] What is germane for present consideration is whether defendants' conduct involved a "search" within the meaning of the Fourth Amendment and whether plaintiffs consented to the search were issues to be determined by the jury.
 
 
 3
 After testimony had been presented by the plaintiffs to establish the underlying facts, plaintiffs' counsel informed the court he wished to call an attorney who, after being given "a hypothetical of the facts that are in evidence in this case," would be asked if he believed that a search took place in the plaintiffs' home and business. Counsel stated that the witness would then be asked "based on the same facts in evidence whether he believed a consent search of either the business or the residence had been taken or undertaken." Finally, counsel proposed to ask the witness:
 
 
 4
 [B]ased on his knowledge in these areas what would constitute a proper search, or the proper documents constituting or allowing a search and would expect that he would say as follows: That if there is no search warrant, if there is no consent, if there are no exigent circumstances, that the search is illegal per se. And that would be the extent of his testimony.[3]
 
 
 5
 Defense counsel objected to the propriety of the testimony, suggesting that the subject was beyond the scope of Rule 702. He argued, "here we have an issue involving whether or not this [testimony] intrudes on the province of this court in terms of the law." Counsel continued:
 
 
 6
 [W]hat constitutes [a] reasonable or unreasonable search is a matter of law. How the jury applies that law to these facts is the province of the jury. But the law must be defined by the Court, not by an expert witness. ... [I]n order for [the expert] to testify, he must first presume what the Court is going to instruct as to the law; and if he doesn't presume what he thinks the Court is going to instruct as to the law, he must ... define his own definitions of the law; and that's where the intrusion of the Court is germane.
 
 
 7
 ....
 
 
 8
 Now, is [the expert] going to tell the jury what the law is upon which he is going to apply a hypothetical set of facts, or is this court going to tell the jury what the standard is?
 
 Following those remarks, the court ruled:
 
 9
 THE COURT: Although the Court doesn't have the precise instruction that it intends to give, the instruction would be along the line that the Constitution protects citizens against unreasonable searches; that this means that a search warrant must be obtained from a judicial officer before a search can be made of a home or an office; that there are exceptions to this requirement, one being a search by consent. Where there is consent, the law enforcement officers may reasonably conduct a search to the extent of the consent.
 
 
 10
 With this ruling, the expert was allowed to testify, and he did so at length. On the basis of hypothetical questions tailored to reflect plaintiffs' view of the evidence, the expert concluded there had been no consent given, and illegal searches had occurred.
 
 II.
 A.
 
 11
 We begin our analysis with a careful look at the contents and purpose of Fed.R.Evid. 702. It states:
 
 
 12
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 As noted by the advisory committee:
 
 13
 There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.
 
 
 14
 (Citation omitted.) Judge Weinstein expressed a similar point:
 
 
 15
 The test expressed in Rule 702--will the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue"--emerges as the central concern of Article VII [of the Federal Rules of Evidence]. Although there were more restrictions on opinion evidence before the enactment of the Federal Rules, helpfulness to the trier of fact was seen then as an essential condition of admissibility.
 
 
 16
 3 Weinstein's Evidence, p 702 (1985).
 
 
 17
 Our judgment must therefore be guided by consideration of whether the testimony of the attorney expert aided the jury in its determination of critical issues in this case. We must also consider, however, whether the expert encroached upon the trial court's authority to instruct the jury on the applicable law, for it is axiomatic that the judge is the sole arbiter of the law and its applicability. As one scholar noted:
 
 
 18
 A witness cannot be allowed to give an opinion on a question of law.... In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.... To allow anyone other than the judge to state the law would violate the basic concept. Reducing the proposition to a more practical level, it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently.
 
 
 19
 Stoebuck, Opinions on Ultimate Facts: Status, Trends, and a Note of Caution, 41 Den.L.Cent.J. 226, 237 (1964) (footnote omitted).
 
 
 20
 The concern that an expert should not be allowed to instruct the jury is also emphasized in Fed.R.Evid. 704, which allows witnesses to give their opinions on ultimate issues. In the advisory notes to this rule, the committee stated:
 
 
 21
 The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural object of his bounty to formulate a rational scheme of distribution?" would be allowed.
 
 
 22
 The committee's illustration establishes the starting point for analysis of admissibility by distinguishing between testimony on issues of law and testimony on ultimate facts. While testimony on ultimate facts is authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored. The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case.
 
 
 23
 Following the advisory committee's comments, a number of federal circuits have held that an expert witness may not give an opinion on ultimate issues of law. In Marx & Co. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977), for example, the Second Circuit held it was error for the trial court to allow a lawyer to render his opinions on the legal obligations arising from a contract and on the legal significance of various facts in evidence. The court stated, "legal opinions as to the meaning of the contract terms at issue ... was testimony concerning matters outside [the witness's] area of expertise.... It is not for witnesses to instruct the jury as to the applicable principles of law, but for the judge." 550 F.2d at 509-10. Similarly, the Fourth Circuit decided the testimony of an attorney on the meaning and applicability of "domestic" (as opposed to foreign) law would be inadmissible as an invasion of the province of the judge. See Adalman v. Baker, Watts & Co., 807 F.2d 359, 366 (4th Cir.1986). In Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir.1983), the Fifth Circuit held that a witness's offering a legal conclusion on the contributory negligence of a party infringed upon the jury's role in deciding the case. Finally, in United States v. Zipkin, 729 F.2d 384 (6th Cir.1984), the Sixth Circuit reversed the trial court's decision to allow a bankruptcy judge to testify regarding his interpretation of the Bankruptcy Act and his own orders. "It is the function of the trial judge to determine the law of the case," the court stated. "It is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles." 729 F.2d at 387.
 
 
 24
 The courts in these decisions draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury. These courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding and weighing of the evidence. In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. He told the jury that warrantless searches are unlawful, that defendants committed a warrantless search on plaintiffs' property, and that the only applicable exception to the warrant requirement, search by consent, should not vindicate the defendants because no authorized person voluntarily consented to allow a search of the premises. He also stated that the acts of the private individual could be imputed to the accompanying police officer to constitute sufficient "state action" for a Sec. 1983 claim. By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under Sec. 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence.
 
 
 25
 Given the pervasive nature of this testimony, we cannot conclude its admission was harmless. There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness. While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury. When an attorney is allowed to usurp that function, harm is manifest in at least two ways.
 
 
 26
 First, as articulated in Marx & Co. v. Diners' Club, Inc., the jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title "expert," is more knowledgeable than the judge in a given area of the law. Marx, 550 F.2d at 512. Indeed, in this case, the expert's knowledge and experience was made known to the jury by both the court and counsel in a manner which gave his testimony an aura of trustworthiness and reliability. Thus, there is a substantial danger the jury simply adopted the expert's conclusions rather than making its own decision. Notwithstanding any subsequent disclaimers by the witness that the court's instructions would govern, a practical and experienced view of the trial world strongly suggests the jury's deliberation was unduly prejudiced by the expert's testimony.[4]
 
 
 27
 Second, testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process. If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same. Given the proclivity of our brothers and sisters at the bar, it can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court, see United States v. Curtis, 782 F.2d 593, 599 (6th Cir.1986); United States v. Ingredient Technology Corp., 698 F.2d 88, 97 (2d Cir.1983). We therefore conclude the expert's testimony on the ultimate issues of law was not harmless as contended by the dissent.
 
 B.
 
 28
 The line we draw here is narrow. We do not exclude all testimony regarding legal issues. We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms. For example, we have previously held that a court may permit an expert to testify that a certain weapon had to be registered with the Bureau of Alcohol, Tobacco, and Firearms. United States v. Buchanan, 787 F.2d 477, 483 (10th Cir.1986). In that case, however, the witness did not invade the court's authority by discoursing broadly over the entire range of the applicable law. Rather, the expert's opinion focused on a specific question of fact.[5] See also Huddleston v. Herman & MacLean, 640 F.2d 534, 552 (5th Cir.1981), modified on other grounds, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (attorney expert in securities law allowed to testify that a statement in a prospectus was standard language for the issuance of a new security because this information helped the jury weigh the evidence of defendants' scienter); United States v. Garber, 607 F.2d 92 (5th Cir.1979) (trial court erred in refusing to let experts on income tax law testify regarding whether failure to report funds received for sale of blood plasma constituted income tax evasion).
 
 
 29
 These cases demonstrate that an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function. However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case.
 
 
 30
 Plaintiffs seek to avoid this conclusion by arguing the expert testimony here was no different from a medical expert testifying that specific conduct constitutes medical malpractice. We do not believe, however, there is an analog between the testimony of the medical expert and that of the legal expert because the former does not usurp the function of the court. The testimony of the medical expert in plaintiffs' hypothesis is more like that of the legal expert who explains a discrete point of law which is helpful to the jury's understanding of the facts.
 
 
 31
 The cross appeal in this case has been left unresolved owing to the panel's disposition. We therefore remand this matter to the original panel for further consideration.
 
 
 32
 SEYMOUR, Circuit Judge, with whom McKAY, Circuit Judge, joins, dissenting.
 
 
 33
 In testifying here, the expert, Daniel Sears, followed a format which is expressly contemplated by the Federal Rules of Evidence and is typical of expert testimony in general: Sears gave "a dissertation or exposition of ... principles relevant to the case," and he took "the further step of suggesting the inference which should be drawn from applying the specialized knowledge to the facts." Fed.R.Evid. 702 advisory committee's note. Although the majority opinion concludes that the admission of this testimony is reversible error, the opinion does not clearly articulate the ground upon which it holds the testimony inadmissible. The rationale upon which the majority then holds the error prejudicial is correspondingly murky, is without persuasive support, and is contrary to the weight of authority. In my view, when the expert testimony is considered in light of the record below and in the context of the rules governing the admissibility of such testimony, the error in its admission, if any, must be considered harmless. Accordingly, I respectfully dissent.
 
 I.
 STANDARD OF REVIEW
 
 34
 It is important to begin a review of the allegedly erroneous admission of this evidence by recognizing that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." Salem v. U.S. Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (emphasis added). "Moreover, error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error." K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155-56 (10th Cir.1985).
 
 
 35
 "The cases clearly indicate that the trial judge's ruling either excluding or admitting evidence will not be disturbed, except in rare instances. For example, in automobile accident cases, the trial judge has been affirmed regardless of whether he admitted or excluded the proffered expert testimony of an 'accidentologist.' For as the Fourth Circuit stated:
 
 
 36
 'Whether, in any given case, the expert testimony is necessary to aid the jury in its search for the truth depends upon such a variety of factors readily apparent only to the trial judge that we must depend heavily upon his judgment.'
 
 
 37
 "Numerous other cases indicate that trial courts may differ in their assessment of the helpfulness of particular kinds of expert testimony. Because of the Federal Rules emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations."
 
 
 38
 3 J. Weinstein & M. Berger, Weinstein's Evidence p 702, at 702-13 to -15 (1987) (footnotes omitted) (quoting Krizak v. W.C. Brooks & Sons, Inc., 320 F.2d 37, 42 (4th Cir.1963)).
 
 II.
 PROVINCE OF THE COURT
 
 39
 In this case, the only reason offered by defendants at trial for excluding Sears' testimony was that, in giving his opinion on the issues of search and consent, Sears would articulate the law applicable to those issues and would thereby usurp the province of the court. I agree with the majority opinion to the extent that it holds excludable expert testimony which merely sets out for the jury the applicable principles of law. Although the Federal Rules of Evidence generally permit an expert to state principles of "specialized knowledge" within his area of expertise, see Fed.R.Evid. 702 advisory committee's note, when a lawyer/expert does so he sets out legal principles. Because it is the law as articulated by the court that governs the jury's deliberations, the expert's evidence on the law may be excludable under Fed.R.Evid. 702 because it is not helpful to the jury.[1]
 
 
 40
 The admission of excludable evidence is not per se prejudicial error requiring reversal, however. The majority opinion here simply does not consider how, or even whether, Sears' articulation of his understanding of the law in fact prejudiced defendants. The two cases cited by the majority in which the admission of expert testimony on the law was held to be reversible error shed little light on the finding of such error here.
 
 
 41
 In United States v. Zipkin, 729 F.2d 384 (6th Cir.1984), the court concluded that allowing a bankruptcy judge to testify on principles of bankruptcy law was prejudicial error. Central to the court's ruling was the fact that the expert's view of the law was erroneous, and the court's belief that a "jury listening to a bankruptcy judge testify as to a question of bankruptcy law would be expected to give special credence to such testimony." Id. at 387. The court noted the particular prejudice arising from the testimony of an expert who was "cloaked with the authority of his position as a bankruptcy judge." Id. at 387 n. 2. Zipkin is thus clearly distinguishable from the case before us.
 
 
 42
 In Marx & Co. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir.1977), an expert in securities law was permitted to give his opinion on the legal standards imposed by a contract to use best efforts to register stock. The court concluded that this testimony was objectionable because it did not concern practices in the securities business, on which the witness was qualified as an expert, "but were rather legal opinions as to the meaning of the contract terms at issue. It was testimony concerning matters outside his area of expertise." Id. at 509. The court held the admission to be prejudicial error because of the danger that "the jury may think that the 'expert' in the particular branch of the law knows more than the judge." Id. at 512. The majority relies on this conclusion, but neither the court in Marx nor the majority here describe how this potential danger created actual prejudice, and, in particular, do not consider whether the expert's view of the law conflicted with the law set out in the trial court's instructions.
 
 
 43
 Furthermore, the discussion in Marx indicates that the court failed to distinguish between testimony that arguably invades the province of the court by instructing on the law, and testimony that, by applying the law to the facts, can be described as invading the province of the jury. For example, the court states the following non sequitur: "It is for the jury to evaluate the facts in the light of the applicable rules of law, and it is therefore erroneous for a witness to state his opinion on the law of the forum." 550 F.2d at 510. The distinction between stating the law and applying it to the facts, a distinction not clearly made by either the court in Marx or the majority here, is a subtle but critical factor in evaluating both admissibility under Fed.R.Evid. 704 and prejudice.
 
 
 44
 Significantly, in neither Zipkin nor Marx did the court indicate whether the jury was instructed to follow the law as given by the court and to give expert testimony only that weight, if any, the jury thought it deserved. In this case, to the contrary, the jury was in fact so instructed. Zipkin and Marx are simply not persuasive authority for concluding that reversible error occurred in the instant case.[2]
 
 
 45
 A review of the record here establishes that defendants cannot sustain their burden of demonstrating a prejudicial effect on their substantial rights arising from Sears' testimony on his view of the law. Defendants pointed out on cross-examination that Sears' opinions were based on his own view of the law, and that Sears did not know what the court's instructions on the law would be. Although Sears agreed that his view of the law in the area of search and seizure could very well differ from that of the trial judge, his definition of an illegal search was essentially the same as the one the judge gave to the jury.[3] Cf. Karns v. Emerson Elec. Co., 817 F.2d 1452, 1459 (10th Cir.1987). Significantly, Sears himself further stated that the trial court's "understanding of the law is controlling in this case." Rec., vol. III, at 133. The court instructed the jury that it must apply the law as stated in the court's instructions, and also informed the jury that it should determine what weight, if any, to give to the expert testimony.
 
 
 46
 Under these circumstances, I do not see how we can assume that, contrary to the court's instruction and Sears' own testimony, the jury turned to Sears rather than the judge for guidance on the applicable law. Moreover, even if the jury had done so, defendants still could not establish that they were thereby prejudiced, given the fact that Sears' legal definitions did not materially differ from those given by the court.[4] In analogous circumstances courts have concluded that any error in the admission of testimony on legal principles is harmless. See, e.g., Karns, 817 F.2d at 1459; United States v. Gold, 743 F.2d 800, 816-17 (11th Cir.1984), cert. denied, 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985); United States v. Fogg, 652 F.2d 551, 556-57 (5th Cir.1981), cert. denied, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); cf. Weinstein's Evidence p 704 (jury confusion by or undue reliance on expert not a problem when court appropriately instructs jury and no conflict exists between expert testimony and court instruction).
 
 
 47
 Rather than addressing these specifics, the majority simply speculates that the jury will give more weight to the views of a legal expert than the instructions of the judge, without telling us how this could have been prejudicial here when the legal views expressed were the same. The majority then expresses concern that premitting a legal expert to define the law will evoke a similar response from the opposing party's legal expert, thereby confusing the jury even more. See maj. op. at 808-809. Of course, that did not happen in this trial, and has nothing to do with whether the error was harmless here. The majority's abstract assumptions of prejudice clearly do not meet the standards for assessing whether the admission of evidence is prejudicial. See supra at 810.
 
 III.
 PROVINCE OF THE JURY
 
 48
 Although they did not make this argument to the trial court,[5] defendants contend on appeal that the admission of Sears' testimony was also prejudicial error because it invaded the province of the jury. The majority opinion appears to agree, stating that the testimony was improper because it instructed "the jury on how it should decide the case," and allowed the expert to "supplant ... the jury's ability to apply this law to the evidence." Maj. op. at 808. In so doing, the majority reveals a fundamental misconception of the grounds on which expert testimony is properly excludable.
 
 
 49
 An expert opinion which embraces an ultimate fact issue is not objectionable on the ground that it usurps the province of the jury by telling it how to decide the case. Indeed, the undisputed purpose of Rule 704 is to eliminate an objection to expert testimony on this basis. See Fed.R.Evid. 704 advisory committee's note. In order to achieve this aim, Rule 704 specifically abolishes the "so-called 'ultimate issue' " rule. Id.
 
 
 50
 "The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information. 7 Wigmore Secs. 1920, 1921; McCormick Sec. 12. The basis usually assigned for the rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric.' 7 Wigmore Sec. 1920, p. 17."
 
 
 51
 Id.
 
 
 52
 Although courts have discretion to exclude expert testimony on other grounds, see 3 Weinstein's Evidence p 704, at 704-11, it is significant that the trial court here did not do so. Thus, our focus must be on whether this failure to exclude on other grounds was an abuse of discretion. The law and the record simply do not support such a conclusion.
 
 
 53
 Rule 702 allows expert opinion testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Accordingly, some courts have held that "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir.1986); see also Zimmer v. Miller Trucking Co., 743 F.2d 601, 604 (8th Cir.1984) United States v. Brown, 501 F.2d 146, 149-50 (9th Cir.1974). However, a leading commentator argues that a trial court is not required to exclude expert testimony if the subject is within the comprehension of the average juror, because any blanket rule requiring exclusion in such situations
 
 
 54
 "is incompatible with the standard of helpfulness expressed in Rule 702. First, it assumes wrongly that there is a bright line separating issues within the comprehension of jurors from those that are not. Secondly, even when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have specialized knowledge to bring to bear on the same issue which would be helpful."
 
 
 55
 3 Weinstein's Evidence p 702, at 702-9 to -10. Moreover, those cases holding expert testimony excludable on this ground have observed that "the admission of such testimony, though technical error, will almost invariably be harmless." Scott, 789 F.2d at 1055; Brown, 501 F.2d at 150.
 
 
 56
 In the instant case, defendants have not argued that the expert's opinion was inadmissible because the issues to be decided were ones on which the jury did not need the help of an expert. To the contrary, at trial defendants characterized the issues as "of quite substantial complexity, not only as to the law but in terms of the particular facts as determined in this case." Rec., vol. III, at 63.
 
 
 57
 When an ultimate fact issue is one on which expert testimony would be helpful to the jury, an expert opinion may nonetheless be excludable if it does not convey information which is in a form useful to the jury.
 
 
 58
 "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria."
 
 
 59
 Rule 704 advisory committee's note. Such expert opinions are excludable not because they tell the jury how to decide the case, but because they do not provide the jury with information the jury needs to make an independent assessment of the ultimate issue. Thus, an opinion couched in inadequately explored legal criteria is not helpful because it uses terminology the meaning of which is not reasonably clear to laymen. See United States v. Hearst, 563 F.2d 1331, 1351 (9th Cir.1977); see also 3 Weinstein's Evidence p 704. For example, telling a jury that a testator did not have the capacity to make a will is not helpful to a jury when the jury is not told what elements comprise the capacity to make a will. The legal term "capacity" by itself provides no assistance to jurors, unversed in the jargon of probate law. The record in the instant case reveals that the legal criteria used by Sears were adequately defined for the jury and defendants do not argue to the contrary. His opinion testimony was therefore not objectionable on that ground.
 
 
 60
 Occasionally, expert opinions framed in terms of inadequate legal criteria have been confusingly condemned as expressing legal conclusions. "A court which does not ban opinion on the ultimate issue as such may nevertheless condemn a question phrased in terms of a legal criterion not adequately defined by the questioner so as to be correctly understood by laymen, the question being interpreted by the court as calling for a legal conclusion." McCormick on Evidence Sec. 12, at 32. Labeling evidence as a legal conclusion and holding it excludable on that ground obscures the real reason for its inadmissibility--lack of helpfulness--and frustrates a proper inquiry into that issue. When an expert gives an opinion that applies the principles of his expertise to the facts in evidence, thereby testifying to his view of the ultimate issue, his opinion will often be in the form of a "legal conclusion", i.e., a conclusion as to the legal result in the case. When jurors understand the legal criteria upon which the opinion is founded, such a "legal conclusion" may nonetheless be helpful to them. Thus, a standard that focuses on a label rather than on the value of the evidence to the jury may well exclude helpful evidence that is properly admissible, a result contrary to Rules 702 and 704. See Moore's Federal Practice Sec. 704.10; cf. McCormick on Evidence Sec. 12, at 32 & n. 24. In addition, denominating testimony as a "legal conclusion" opens the door to confusing an opinion arguably usurping the province of the court with an opinion applying the law to the facts. Failure to carefully identify the ground on which evidence is objectionable renders impossible the required assessment of whether its admission actually caused the prejudice that its inadmissibility was designed to prevent.
 
 
 61
 The majority opinion in this case makes these very mistakes. Although the opinion pays lip service to the Federal Rules of Evidence by recognizing that expert opinions on the ultimate issue are admissible if helpful to the factfinder, it condemns the expert testimony here as embodying inadmissible legal conclusions, a characterization that does not explain why the testimony is not helpful or is otherwise inadmissible.[6] Labeling testimony as a legal conclusion in and of itself provides no meaningful guidance on either its admissibility or any resulting prejudice.
 
 
 62
 Finally, I must address the majority's concern that the evidence circumvented "the jury's decision-making function by telling it how to decide the case." Maj. op. at 808. The majority finds error because "the expert in this case was improperly allowed to instruct the jury on how it should decide the case", thereby supplanting "the jury's ability to apply this law to the evidence." Id. at 808. In so doing, the majority fails to recognize both that any expert who gives an opinion on the ultimate issue is in effect telling the jury how to decide the case, and that such testimony is specifically permitted by Rule 704. See, e.g., Nielson v. Armstrong Rubber Co., 570 F.2d 272, 276-77 (8th Cir.1978) (expert testimony that manufacturing process caused product defect admissible under Rule 704). The only exception to allowing an expert opinion on the ultimate issue of fact is set out in Rule 704(b), which provides:
 
 
 63
 "(b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."
 
 
 64
 We are not at liberty to create another exception for legal expert testimony when the Rules do not do so. Moreover, as the majority acknowledges, this court and other circuits allow an opinion by a legal expert in which the expert applies the principles of his expertise, the law, to the facts in evidence. See, e.g., United States v. Buchanan, 787 F.2d 477, 483 (10th Cir.1986); see also Gold, 743 F.2d at 816-17; United States v. Bednar, 728 F.2d 1043, 1048 (8th Cir.1984); Fogg, 652 F.2d at 556.
 
 
 65
 The majority's statement that Sears' testimony was excludable because it supplanted the jury's ability to apply the law to the evidence may be meant as a holding that this testimony created the danger that the jury would rely on the expert rather than make an independent determination of the ultimate issues. However, the jury in this case was instructed that it should determine what weight, if any, to give the expert testimony, as with the testimony of any other witness. The jury was further instructed that it was the judge of the facts, that it was to follow the law as stated in the court's instructions, and that it was to apply this law to the facts as the jury found them. Courts and commentators have overwhelmingly concluded that such instructions preclude a finding of prejudice because they eliminate any possibility that expert testimony on the ultimate fact could overbear the jury's independence. See, e.g., Karns, 817 F.2d at 1459; Gold, 743 F.2d at 817; Davis v. Combustion Engineering, Inc., 742 F.2d 916, 919 (6th Cir.1984); Fogg, 652 F.2d at 557; United States v. Scavo, 593 F.2d 837, 844 (8th Cir.1979); 3 Weinstein's Evidence p 04, at 704-15 to -16; cf. 11 Moore's Federal Practice Sec. 704.10, at VII-66 (helpful expert testimony on ultimate issues does not invade jury's province "since it is trier of fact who ultimately determines what weight to give the opinion testimony of the witness"); McCormick on Evidence Sec. 12, at 31 (notion that opinions on ultimate facts usurp function of jury is illogical).
 
 
 66
 Although the majority states that its holding is a narrow one, and that expert legal testimony is still admissible, the opinion provides no meaningful standard by which to distinguish proper testimony from that giving rise to reversible error. It is therefore difficult to see how any prudent trial judge will risk reversal by admitting such testimony after today's ruling. If the expert is allowed to give his opinion without articulating the underlying legal principles, the opinion is objectionable as based on inadequately explored legal criteria. See Rule 704 advisory committee's note. If the expert does define the legal principles upon which his opinion is based, under the majority opinion he usurps the province of the court, or the jury, or both. Moreover, although in virtually every other context this court presumes that a jury will follow the court's instructions, under today's decision even the most explicitly limiting jury instructions will not prevent a finding of prejudice.
 
 IV.
 CONCLUSION
 
 67
 In sum, even assuming the majority could reasonably conclude the trial judge abused her discretion in admitting the evidence, the admission simply did not give rise to prejudicial error. In reversing, the majority disregards the deference with which we view trial court evidentiary rulings, fails to provide meaningful guidance on either admissibility or prejudice, and reintroduces "quibbles over the meaning of ultimate fact, and the distinction between fact and law" which the Federal Rules of Evidence were meant to eliminate. 3 Weinstein's Evidence p 704, at 704-17. Accordingly, I dissent.
 
 
 
 [1]
 Specht v. Jensen, 832 F.2d 1516 (10th Cir.1987)
 
 
 [2]
 See Specht, 832 F.2d at 1519-20
 
 
 [3]
 When questioned by the court whether the witness would be testifying on "an area of fact," plaintiffs' counsel did not directly answer but explained the witness would render opinions on whether there had been a search, whether there had been consent to the search, whether the consent was voluntary, and whether there were exigent circumstances to permit a warrantless search. Because the testimony was to be based upon hypothetical questions which assumed the existence of the essential facts, we believe there could be no "area of fact" involved. Thus, contrary to the plaintiffs' present assertions, counsel's representation clearly indicated the expert's testimony would cover only questions of law
 
 
 [4]
 Indeed, one is constrained to ask why it is helpful to the jury to present expert testimony on the law if the witness himself states, as he did here, that anything he says is subject to correction by the judge. Is this not more confusing than helpful? The question is rhetorical and stands as further example why a lawyer's testimony on ultimate issues of law is improper
 
 
 [5]
 By contrast, the expert in the instant case did not testify on issues of fact because he based his opinions on hypothetical facts. The expert added nothing to resolve the salient factual issues of the case
 
 
 [1]
 An interesting contrary view on presenting expert legal testimony to the trier of fact is found in Note, Expert Legal Testimony, 97 Harv.L.Rev. 797, 811-12 (1984) (footnotes omitted)
 "Expert testimony in harmony with the judge's view of the law may be completely appropriate. Allowing legal testimony before the jury only when the testimony is consistent with the judge's view of the law will eliminate the concern that such testimony may usurp the role of the judge or jury. As long as an expert does not present a legal conclusion that merely tells the jury what result to reach, expert legal testimony does not impinge upon the jury's function of applying the law to the facts of the case. Moreover, although there is a danger that such testimony will partially usurp the judge's role of instructing the jury on the law, such testimony may enhance rather than interfere with the judge's charge to the jury if the expert testifies consistently with the judge's view of the law."
 
 
 [2]
 The majority also cites Adalman v. Baker, Watts & Co., 807 F.2d 359 (4th Cir.1986), and Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir.1983). In those cases, however, the court affirmed the trial judge's decision to exclude an expert opinion. In view of the deference to be accorded a trial court's evidentiary rulings, they provide little help in determining whether the admission of such evidence constitutes reversible error
 
 
 [3]
 In their brief filed after rehearing was granted, defendants for the first time asserted that Sears misstated the law in two material respects. A careful examination of the record reveals that any discrepency between Sears' articulation of the law and the court's instructions is so de minimis as to be irrelevant, which perhaps explains why defendants did not raise this argument in a timely manner
 
 
 [4]
 The majority's conclusion that Sears' testimony was not helpful to the jury is grounded on the conclusion that it was superfluous because it was cumulative to the court's instructions. However, the admission of evidence is not prejudicial error merely because that evidence is cumulative. See Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1332 (10th Cir.1984)
 
 
 [5]
 Fed.R.Evid. 103(a)(1) provides
 "(a) Effect of erroneous ruling
 Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 (1) Objection
 In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context...."
 
 
 [6]
 In rejecting the expert testimony here as inadmissible legal opinion, the majority opinion appears to hold that it usurped the province of the court, and was not helpful to the jury, and told the jury how to decide the case