972 F.2d 1337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lloyd CHIATE, Plaintiff-Appellant,
v.
Stevland MORRIS, aka: Stevie Wonder, et al., Defendants-Appellees.
 No. 90-55428.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1992.
Decided Aug. 17, 1992.
 
 Before POOLE, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Lloyd Chiate appeals the judgment entered in favor of appellees Stevland Morris (p.k.a. "Stevie Wonder"), Black Bull Music, Motown Record Corporation, Orion Pictures Corporation, GTE Sprint Communications, MCA Distributing Corporation, and Jobete Music Company in his suit alleging copyright infringement by Morris. The song in question, "I Just Called To Say I Love You," earned Morris an Academy Award for Best Original Song in 1985. The case was tried before a jury, which ruled in Morris' favor by special verdict.
 
 
 3
 Chiate argues that the trial judge erred by making comments which were biased and prejudicial, depriving him of a fair trial. He further argues that the exclusion of his expert witness' demonstrative evidence, the admission of Morris' testimony regarding his personal feelings about being accused of copyright infringement, and the admission of testimony by Chiate's former co-party's attorney were all erroneous. Chiate seeks a new trial before a different judge. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 4
 Lloyd Chiate collaborated with Lee Garrett, a songwriter and friend of Morris', in September of 1976 to write a song, "Hello It's Me/I Just Called to Say." Stevland Morris wrote the chorus to "I Just Called to Say I Love You" on July 16, 1976. [RT 2/8/90 24:10-13]. Morris' song went through various changes until it was completed for the movie "The Woman in Red" in 1984. However, the chorus[1] was important, as it was used in the movie as well as in commercials for GTE Sprint. Chiate and Garrett filed suit against the defendants in October of 1985, claiming that Morris had infringed their copyright.
 
 
 5
 After a simultaneous exchange of information by the parties, Garrett dismissed with prejudice his claim against Morris on May 7, 1986, and granted the defendants a retroactive license for "Hello It's Me/I Just Called To Say" with the intent of foreclosing Chiate's claim. Chiate, undaunted, continued to press his claim.
 
 
 6
 The district court judge made comments which Chiate argues were prejudicial and biased. The district court judge also excluded a chart offered as evidence by Chiate's expert witness, Dr. Stern, either because he found it irrelevant or of no use to the jury. The district court judge did admit testimony by Morris as to his personal feelings about being accused of copyright infringement, and testimony by counsel for Garrett in which he gave his opinion on the validity of Garrett's and Chiate's claim. Chiate argues that he did not receive a fair trial and seeks a new trial before a district judge. A Notice of Appeal was timely filed.
 
 STANDARD OF REVIEW
 
 7
 The manner in which a judge conducts a trial is reviewed for abuse of discretion. Hansen v. C.I.R., 820 F.2d 1464, 1467 (9th Cir.1987). Admission or exclusion of expert witness testimony will be upheld unless the district court's decision is "manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 35 (1962); Rogers v. Raymark Industries, Inc., 922 F.2d 1426, 1429 (9th Cir.1991). "Evidentiary rulings are reviewed for abuse of discretion, and will not be reversed absent some prejudice. To reverse, we must say that more probably than not, the error tainted the verdict." Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (1986).
 
 DISCUSSION
 
 8
 I. Whether the district court judge's remarks the product of bias and prejudice
 
 
 9
 Comments by a judge require reversal where the judge expresses his opinion on an ultimate issue of fact in front of the jury or argues for one of the parties. Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 779 (9th Cir.1990). Although a trial judge may comment on the evidence, he may neither distort nor add to it. White v. City of Norwalk, 900 F.2d 1421, 1426 (9th Cir.1990). The ultimate question is whether the judge made it clear to the jury that all matters of fact are submitted to their determination. Id. at 1426. The standard for reversal for judicial misconduct is whether the trial was unfair. Handgards, Inc., v. Ethicon, Inc., 743 F.2d 1282, 1289 (9th Cir.1984), cert. denied, 469 U.S. 1190 (1985).
 
 
 10
 Chiate's counsel objected to a question asked of Morris which he considered leading. The district court judge overruled the objection, stating, "It was a leading statement and almost regretfully I'm going to let it stand because I feel this witness is going to tell us the truth one way or the other on it." [RT 2/9/90 47:8-11]. Based upon this statement, Chiate moved for a mistrial, which was denied. The next day, the judge made the following statement:
 
 
 11
 The Court: My attention has been called to the fact that during the time Mr. Morris was on the witness stand and his own lawyer was examining him, his lawyer asked a leading question of him.
 
 
 12
 And I warned his lawyer not to ask leading questions but I said that I felt that I would let Mr. Morris answer that question. And I may have said something like, I felt that I could expect a truthful answer from him.
 
 
 13
 I might have worded that better. And I will say to you that I did not intend by that remark to certify to you that in my opinion that that witness was testifying truthfully.
 
 
 14
 Because that is your job. And I have told you from the outset of this trial, that is your job to make a judgment as to the credibility of each and every witness. And, please, nothing that I say or do during the course of this trial is intended as hinting to you how I feel about this trial, because I would be taking your job away from you.
 
 
 15
 Your job is to assess the credibility of each witness and to make a decision in this case based upon your own individual judgment.
 
 
 16
 RT 2/13/90 at 115:5-25.
 
 
 17
 Another statement which Chiate argues was biased and prejudicial was the judge's reference to the reversal in part of summary judgment in favor of the appellees. He explained to the jury, "I was nearly right, but there was an exception in a certain legal sense." RT 2/13/90 174:10-15.
 
 
 18
 Chiate argues that the judge made biased remarks in reference to an article in the Los Angeles Daily Journal[2], in which Mr. Dodell, Chiate's attorney, said that the fact the judge abused him more than any other judge in his 25 years of practice showed prejudice and bias:
 
 
 19
 The Court: Oh Counsel. You have told newspaper reporters a couple of days ago that I have abused you more than any judge has abused you in 25 years of practice. And I'm trying hard not to abuse you anymore, but you have got to help too.
 
 
 20
 RT 2/15/90 115:24-116:14.
 
 
 21
 Although Judge Williams' remarks may have been less than helpful, the issue remains whether he made it clear to the jury that issues of fact and credibility were solely within their province, and ultimately whether Chiate received a fair trial. Chiate argues that the judge's instruction was not sufficient to cure the error, and relies on Maheu v. Hughes Tool Co., 569 F.2d 459, 471 (9th Cir.1977), for support. In Maheu, a defamation action in which the credibility of the plaintiff was the crucial factor in the entire case, the judge gave what amounted to a character reference for the plaintiff, speaking of the plaintiff in glowing terms. Maheu v. Hughes Tool Co., 569 F.2d 459, 471 (9th Cir.1977). Judge Williams' comment did not approach this, and his instruction was enough to cure any error. This case is more factually similar to Ward v. Westland Plastics, Inc., in which the judge seldom spoke directly to the ultimate issues, and there was a lack of persuasive evidence on the ultimate issues. Ward v. Westland Plastics, Inc., 651 F.2d 1266, 1271-72 (9th Cir.1980), disapproved on other grounds 450 U.S. 248 (1981).[3]
 
 
 22
 Although many of the Ninth Circuit cases which state the requirements for proving bias and prejudice are cases in which a party has argued that recusal was required, one non-recusal case has held, as do most of the recusal cases, that the bias exhibited by the district judge must be from an extrajudicial source. Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1383 (9th Cir.1984), disapproved on other grounds 470 U.S. 564 (1985); cf. Pau v. Yosemite Park and Curry Company, 928 F.2d 880, 885 (9th Cir.1991) (bias or prejudice must stem from an extrajudicial source and not from conduct or rulings during the course of proceedings). Although Chiate distinguishes recusal cases as inapposite, the standards set forth by them are most applicable.
 
 
 23
 The judge's comment regarding the reversal of summary judgment clearly did emanate from a ruling in the course of the proceedings. Chiate further argues, however, that, "[a]lthough extrajudicial contact is in no way a prerequisite for establishing prejudice, bias, ...", the trial judge did have extrajudicial contact with Wonder. Chiate further argues that "[t]he trial judge clearly knew a lot about Wonder, a celebrity, long before this action was even filed, and quite apparently had positive feelings towards Wonder even before this lawsuit." Reply Brief at 11. Chiate's unsupported statement, without more, is conclusory and lacking record proof.
 
 
 24
 It is doubtful that the articles in the Los Angeles Daily Journal constituted an extrajudicial source of the judge's alleged bias. In United States v. Monaco, this Court held that a judge's impartiality could not be attacked on the basis of information and beliefs acquired while acting in his or her judicial capacity. United States v. Monaco, 852 F.2d 1143, 1147 (9th Cir.1988), cert. denied, 488 U.S. 1040 (1989). This Court found that the judge's comments in that case, which were supported by evidence presented during the course of proceedings, did not emanate from an extrajudicial source. Id.
 
 
 25
 Judge Williams' remarks about "abusing" Mr. Dodell emanated from an extrajudicial source in a strained sense of the word "emanated". However, the references were made in Judge William's efforts to restrain himself from "abusing" Mr. Dodell, and were most often made in response to Mr. Dodell's attempts to frustrate the judge's evidentiary rulings. See, e.g., RT 2/16/90 21:19-22:20; 49:5-50:10 ("Counsel, would you please listen to my instructions to you. You're not going to make your own rules in this courtroom. That's why I have to abuse you so."). A judge's remarks geared toward facilitating an orderly trial are not, in and of themselves, prejudicial. Hansen, 820 F.2d at 1467.
 
 
 26
 Moreover, prejudice or bias must be against a party, not the party's counsel, unless the bias is so virulent as to result in material harm to that party's case. United States v. Burt, 765 F.2d 1364, 1368 (9th Cir.1985). Having read the judge's remarks in context, we conclude that what Chiate would have us call bias is little more than a judge's exasperated effort to rein in and control the trial before him. There is no evidence of bias so virulent as to have harmed Chiate's case. We conclude that the judge's remarks did not result in an unfair trial.
 
 
 27
 II. Whether the trial court erred in excluding testimony and documents of Chiate's expert witness
 
 
 28
 The court excluded Dr. Stern's chart and testimony about that chart either on the ground that it was irrelevant, Fed.R.Evid. 402, or of no assistance to the trier of fact, Fed.R.Evid. 702. This ruling, even if an abuse of discretion or manifestly erroneous, cannot be overturned on appeal if the error was harmless. Burgess v. Premier Corp., 727 F.2d 826, 833 (9th Cir.1984).
 
 
 29
 Federal Rule of Evidence 402 provides for the exclusion of irrelevant evidence. Fed.R.Evid. 402. Federal Rule of Evidence 702 provides:
 
 
 30
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 31
 Fed.R.Evid. 702. Dr. Stern, a musicologist, planned to show that two songs which sound different could be the same song by charting "Silent Night" as sung by the Westminster Choir College and as sung by Mahalia Jackson. The court excluded the chart and Dr. Stern's testimony about it saying:
 
 
 32
 The comparison ought to be made for this jury's enlightenment on the two songs that are at issue here and not something else. All of us know, I think, that a performer can do various things with a tune. That's why they are great. We are worried here about the tune itself and not the performer. And this illustration, this demonstration, seems to want to tell us how different performers can make improvisations with tunes. That's not our issue here. And if you can bring a demonstration of these two tunes and how on paper they look, or similarities or differences, I will invite it.
 
 
 33
 RT 2/13/90 31:17-32:3. The court admitted the testimony and charts of Morris' musicologist in which he compared "I Just Called To Say I Love You" to "Hello, It's Me/I Just Called to Say" and found them to be strikingly dissimilar. Both sides were limited to one expert witness each.
 
 
 34
 Evidentiary decisions are committed to the wide discretion of a trial judge. See Ward, 651 F.2d at 1270. Expert testimony showing substantial or striking similarity between the songs in question is crucial to proving objective substantial similarity, an element of copying. See Sid and Marty Krofft Television Prods. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir.1977); 3 M. Nimmer and D. Nimmer, Nimmer on Copyright § 13.03[A] (1991); but see Baxter v. MCA, Inc., 812 F.2d 421, 423-424 (9th Cir.) (reading Krofft as requiring only an intrinsic test of substantial similarity), cert. denied, 484 U.S. 954 (1987)); see generally Note, The Role of The Expert Witness in Music Copyright Infringement Cases, 57 Fordham L.Rev. 127, 129-134 (1988).[4] This was not the kind of demonstrative evidence Dr. Stern planned to offer. Although Dr. Stern did testify at length about the similarity between the two songs, his failure to apply an objective analysis to the songs at issue in the chart he offered as evidence would plausibly make the chart irrelevant and of no use to the jury. We find no abuse of discretion here.
 
 
 35
 III. Whether the district court erred in allowing Morris to testify regarding his feelings upon being accused of copyright infringement and his dream of singing his composition with the Beatles
 
 
 36
 Chiate argues that Morris "played up to the jury" by invoking God, The Beatles, and the late John Lennon in a way that was highly prejudicial.[5] Appellees argue that this testimony went to the core issue of whether Morris copied the Chiate/Garrett composition, and was relevant to rebut testimony from Chiate's expert witness that Morris subconsciously copied the Chiate/Garrett composition.
 
 
 37
 Although Chiate argues that Morris' moving testimony regarding his feelings was prejudicial, Clark v. City of Los Angeles, 650 F.2d 1033, 1038 (9th Cir.1981) (admission of diary kept by plaintiff of her encounters with police was reversible error because of, among other things, the "heavily emotive" nature of the evidence), cert. denied, 456 U.S. 927 (1982), and such prejudice outweighed its probative value, this is a weighing left to the wide discretion of the judge which we are reluctant to disturb. See Ward, 651 F.2d at 1270.
 
 
 38
 Morris' testimony regarding his creative process and his images of singing with The Beatles was relevant to prove that he did indeed create his song independently of Chiate and Garrett. To the extent that such testimony is credible, the jury could compare Morris' intention regarding how his creation would sound with his ultimate product in order to decide if Morris' work was original. The unlikelihood of prejudice here was more probable than not.
 
 
 39
 IV. Whether the trial court err in admitting testimony of the counsel for Chiate's former co-plaintiff
 
 
 40
 Chiate further argues that the admission of testimony by Jack Whitley, counsel for Garrett, was an abuse of discretion. Whitley testified about advice he gave Garrett and his conclusions as to the viability of the suit. Chiate contends that this testimony amounted to a legal opinion. Whitley testified about the advice he gave Garrett[6] as follows:
 
 
 41
 The Witness: Because it's become such a public matter and there's nothing to hide, so we are really happy to help. I advised him after reviewing the evidence that there was no longer any probable cause for maintaining the action.
 
 
 42
 It was clear to me that the facts upon which the lawsuit had been based, or at least the contention and the theory upon which the lawsuit had been based, simply no longer held water for a number of reasons.
 
 
 43
 But from a legal point of view, it was clear to me that the action was no longer tenable, because the evidence--formidable substantive evidence that I found to be virtually incontrovertible had arisen, which demonstrated that Mr. Morris had composed his song prior to the time that my client had access to Mr. Morris. And it was a very simply [sic] matter.
 
 
 44
 RT 2/15/90 173:5-174:8.
 
 
 45
 Whitley also testified that he did not want to damage the Garrett/Morris friendship, and further remarked that he found the deposition testimony of Morris' engineer, John Fischbach, to be "credible." Whitley was not called as an expert witness.
 
 
 46
 Although a lay witness may give an opinion on an ultimate issue to be decided by the trier of fact, Fed.R.Evid. 704(a), she may not offer legal conclusions. See Fed.R.Evid. 704 advisory committee's note; Torres v. County of Oakland, 758 F.2d 147, 151 (6th Cir.1985) (admission of lay witness' testimony in Title VII case that plaintiff had not been discriminated against because of her national origin was error, although harmless; such testimony was a legal conclusion); Christiansen v. National Sav. and Trust Co., 683 F.2d 520 (D.C.Cir.1982) (lay legal conclusions are inadmissible in evidence); cf. Specht v. Jensen, 853 F.2d 805, 808-809 (10th Cir.1988) (en banc) (admission of expert attorney's testimony as to whether the searches in question were legal was harmful error), cert. denied, 488 U.S. 1008 (1989); Adalman v. Baker, Watts & Co., 807 F.2d 359, 368-69 (4th Cir.1986) (affirming exclusion of testimony by expert witness which included legal conclusions), disapproved on other grounds 486 U.S. 622 (1988); Owen v. Kerr-McGee Corp., 698 F.2d 236, 239 (5th Cir.1983) (affirming exclusion of expert testimony which would have encompassed a legal conclusion); see generally E. Cleary et al., McCormick on Evidence § 12, 31-32 (1984 & 1987 Supp.). Whitley's testimony regarding the credibility of Fischbach's deposition testimony is not an opinion on an ultimate issue. Whitley's testimony regarding the validity of the Garrett/Chiate claim, read apart from the rest of his testimony, could be construed as a legal opinion. When read in context, it is not.
 
 
 47
 On cross examination, Whitley recounted how he came to the conclusion that there was no viable claim based upon the facts which came to his attention:
 
 
 48
 Although Mr. Fishbach's testimony and Mr. Wonder's testimony that the song was created in July of 1976 was very strong evidence, but [sic] it was the Dick Clark--it was the Satche tape and the Dick Clark tape all of which accumulatively occurred prior to Lee's first access to Steve in July of '77 that convinced me that there was just no possibility that this lawsuit had any viability.
 
 
 49
 RT 2/15/90 205:7-13.
 
 
 50
 Whitley's testimony, in context, is an opinion on an ultimate issue: whether or not, given what Whitley considered to be the facts of the case, Morris had infringed upon the Chiate/Garrett copyright. Under Federal Rule of Evidence 704(a), it was admissible. There was no abuse of discretion here.
 
 CONCLUSION
 
 51
 Although the rulings and statements by the judge in this trial may have been less than optimal for Chiate, they were not less than fair. We need not address his request for a remand to a different district judge, as the decision of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The chorus is as follows:
 I just called to say I love you
 I just called to say how much I care
 I just called to say I love you
 And I mean it from the bottom of my heart.
 
 
 [2]
 The article was never made a part of the record
 
 
 [3]
 The special verdict included nine interrogatories to which the jury answered as follows:
 
 
 [1]
 Chiate was a co-author and therefore copyright owner of "Hello It's Me."
 
 
 [2]
 Chiate did not co-write the chorus of "Hello It's Me/I Just Called to Say" before Morris first wrote the chorus for "I Just Called to Say I Love You"
 
 
 [3]
 Morris did not have access to Plaintiff's composition before Morris first wrote the chorus for "I Just Called to Say I Love You"
 
 
 [4]
 "I Just Called To Say I Love You" is not substantially similar to the chorus in "Hello It's Me/I Just Called To Say"
 
 
 [5]
 "I Just Called To Say I Love You" and "Hello It's Me/I Just Called to Say" are not strikingly similar such that they can only be explained by copying rather than coincidence
 
 
 [6]
 "I Just Called To Say I Love You" was not copied from "Hello It's Me/I Just Called To Say"
 
 
 [7]
 Morris independently created the chorus for "I Just Called To Say I Love You."
 
 
 [8]
 The license granted by Garrett did not destroy the value of the copyright in "Hello, It's Me/I Just Called To Say"
 
 
 [9]
 Defendants did not engage in false designations of origin
 Appellees' Supplemental Excerpts of Record at 1-6.
 
 
 [4]
 In order to prove copyright infringement, the plaintiff must prove ownership of a valid copyright and "copying" of the constituent elements of the work that are original. Feist Publications, Inc. v. Rural Telephone Service Co., 111 S.Ct. 1282, 1296 (1991); Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir.1990). A plaintiff may establish copying by use of circumstantial evidence to establish defendant's access to a copyrighted work prior to creation of her own work, and substantial similarity of expression in the copyrighted work and the defendant's work. See Shaw, 919 F.2d at 1356. Although this Court once required plaintiffs to prove objective, "extrinsic" substantial similarity of general ideas and expression and subjective, "intrinsic" substantial similarity of general ideas and expression, see Sid and Marty Krofft Television Prods, Inc., v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir.1977), a plaintiff need only prove objective and subjective substantial similarity of expression. See Shaw, 919 F.2d at 1357; but see Baxter, 812 F.2d at 424 (reading Krofft as requiring only an intrinsic test of substantial similarity). If a plaintiff is unable to prove access, a "striking similarity" between the works at issue will give rise to an inference of copying. See id. at 423-24
 
 
 [5]
 Mr. Morris' testimony was as follows:
 The Witness: I have been very hurt by being accused of taking anyone's song or stealing anyone's song. And the reason that it hurts so much is because I think all songs that I have been given are gifts from the Father.
 I feel this very painfully because I have, in fact, as has been testified in this case--where I was writing a song, that I didn't have a chorus to, and I gave credit percentage of the song to Mr. Garrett.
 And it was not any kind of hand me down because he was a friend but because of his contribution to that song.
 It hurts because I have written songs with different people. I have written songs alone. I have written songs that have been stolen from me.
 An example is a song called Valentine's Love that was recorded by Mr. Michael Henderson. And originally the song was a song that Mr. Henderson asked me the chords to. I told him the chords and he was working with Mr. Miles Davis in Japan, and the next time that I heard the song, it was done by someone else.
 And I never sued him about the song. I left it up to the Father to deal with that. And that's really all I have to say about it.
 RT 2/16/90 11:16-13:2.
 Morris spoke of his experience writing the song thus:
 I can only tell you that I did write the song. Just to speak on "I Just Called to Say I Love You" very clearly, I testified earlier that when I was in the car riding with John, I had the melody and the lyric that I had for the chorus, and I imagined in my mind when hearing the chords that The Beatles were singing with me.
 And that idea and feeling is what inspired me to use the vocoder, when I heard about the vocoder. And I always imagined myself and The Beatles singing that. It was in 1980 I believe, or '81 when John Lennon was killed, that I knew that the dream would never be fulfilled.
 I only share this with you because these are things that happen if you are a writer. And if you write songs you experience certain emotions....
 RT 2/16/90 14:11-21.
 
 
 [6]
 Garrett waived the attorney-client privilege