**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff Counter Defendant -
    Appellee,

v.

STANLEY L. WADE; JANET B. WADE;
CHERRY HILLS UBO; CHERRY HILLS
APARTMENTS BUSINESS TRUST,
Stanley L. Wade, Trustee; CRESTWOOD
COVE APARTMENTS BUSINESS
TRUST, Stanley L. Wade and Janet B.
Wade, Trustees, d/b/a Cottonwood
Business Trust; DEL MONICO
APARTMENTS BUSINESS TRUST,
Stanley L. Wade, Trustee; EL CALIENTE
APARTMENTS BUSINESS TRUST,
Stanley L. Wade, Trustee; HILL RISE
APARTMENTS BUSINESS TRUST,
Stanley L. Wade, Trustee; HILL RISE
UBO; LA PARISIENNE APARTMENTS;
LA PARISIENNE APARTMENTS
BUSINESS TRUST, Stanley L. Wade,
Trustee; PALISADES BUSINESS
TRUST, Stanley L. Wade and Janet B.
Wade, Trustees; SADES APARTMENTS;
SHANGRI-LA UBO; WADE SANDY,
Stanley L. Wade, Trustee, d/b/a Wade
Sandy Business Trust,

    Defendants Cross Defendants -
    Appellants.

No. 18-4140
(D.C. No. 2:15-CV-00883-DS)
(D. Utah)

_____

# ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, **KELLY**, and **O'BRIEN**, Circuit Judges.

_____

Defendants appeal the district court's grant of summary judgment to the United States in an action the government brought to (1) reduce Stanley Wade's outstanding tax liabilities to judgment, and (2) foreclose various federal tax liens to satisfy that judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

This case stems from Mr. Wade's longstanding efforts to evade taxes.

Mr. Wade pled guilty in 1990 to making false statements on tax returns. *United States v. Wade*, 940 F.2d 1375, 1376 (10th Cir. 1991). Beginning in November 1992, Mr. Wade conspired with his wife "to defraud the IRS by transferring ownership of various apartment complexes into sham entities." *United States v. Wade* (*Wade II*), 203 F. App'x 920, 923 (10th Cir. 2006). The precise contours of their scheme varied by property. But the ploy generally involved transferring title to something the Wades called an unincorporated business

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

organization (UBO)[1] and ultimately to a business trust the Wades controlled, all for no consideration.[2]

Mr. Wade failed to report the income from these properties to the IRS. He also filed a "no asset" chapter 7 bankruptcy case without reporting his interests in the properties. The government brought criminal charges against the Wades in March 2004. Mrs. Wade pled guilty, and a jury convicted Mr. Wade of seven charges relating to tax evasion and bankruptcy fraud.

Just weeks after being indicted on charges stemming from his use of the UBOs and business trusts to eschew tax liability, in April 2004 Mr. Wade purported to gift his interests in the UBOs and business trusts to Mrs. Wade.

In 2006–2008, the government issued assessments related to Mr. Wade's 1993–2004 tax liability. The government also recorded liens on the real property

---

[1] An attorney advised the Wades in 1993 that "there is no recognized organization" known as a UBO, Aplt. App. Vol. IV at 847, and that "schemes such as this cause the IRS to see red and thus prosecute the matters criminally," *id.* at 850.

[2] The shell game took one of the following forms: (1) the Wades transferred title to the property first to a now-defunct corporation Mr. Wade created, to a so-called UBO the following day, and then to a business trust a few years later, *see* Aplt. App. Vol. III(A) at 582–92, 598–99; (2) the Wades transferred the property first to a now-defunct corporation Mr. Wade created and then to a business trust a few years later, *see id.* at 594–97; (3) the Wades transferred the property to a UBO or business trust; *see id.* at 581, 599–600; (4) the Wades transferred the property to a now-defunct corporation that Mr. Wade created, *see id.* at 594, 597; (5) Mr. Wade transferred the property to a UBO, then to a limited liability company, then back to the UBO, *see id.* at 593; or (6) the Wades recorded a mortgage in favor of a UBO, *see id.* at 600. No consideration changed hands in connection with any of these transfers.

involved in the Wades' shell game. It then brought this action against the Wades and various entities they own and control. On summary judgment, the district court found, among other things, that Mr. Wade fraudulently transferred his real property interests to the UBOs and other entities, fraudulently transferred his interests in the UBOs and other entities to Mrs. Wade, and owes more than $15 million to the United States. The district court then authorized the government to foreclose its liens on the fraudulently transferred parcels of real property.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, a plaintiff must come forward with evidence and cannot rely on "speculation, conjecture, or surmise." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted).

## III. Discussion

### A. Statute of Limitations

The government sought to void Mr. Wade's transfers to the UBOs, business trusts, and other entities under the Utah Uniform Fraudulent Transfer Act (UFTA), Utah Code Ann. §§ 25-6-1 to 25-6-13 (1989).[3] Defendants assert that the

---

[3] The Utah UFTA was renamed, renumbered, and amended effective May 9, 2017. *See* 2017 Utah Laws 204. Because the transfers at issue took place while the prior version was still in effect, that version governs this case. *See* Utah Code

4

government's fraudulent transfer claims are time-barred because the claims were brought outside the state-law limitations period. But here "the government is acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law." *United States v. Holmes*, 727 F.3d 1230, 1235 (10th Cir. 2013) (internal quotation marks omitted). While it proceeds "by invoking a provision of state law[,] . . . the government's claim is not subject to state statutes of limitation or extinguishment." *Id.*

Rather, the operative limitations period gives the government ten years after an assessment to collect a tax by suit. *See* 26 U.S.C. § 6502(a)(1). The government assessed the applicable taxes beginning in February 2006 and brought this suit in December 2015—*i.e.*, within the applicable ten-year limitations period.

## B. Fraudulent Transfer

Under Utah law, a transfer is voidable if the transferor made the transfer "with actual intent to hinder, delay, or defraud" a creditor. Utah Code Ann. § 25-6-5(1)(a) (1989). To determine whether a transferor possessed the requisite "actual intent," courts consider the presence or absence of badges of fraud, including whether:

> (a) the transfer or obligation was to an insider; (b) the debtor retained possession or control of the property transferred after the transfer; (c) the transfer or obligation was disclosed or concealed; (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (e) the transfer was of substantially all the debtor's assets . . . (g) the debtor removed or concealed assets; (h) the value of the consideration received by the debtor was reasonably

---

Ann. § 25-6-406(2)(b) (2017); Utah Code Ann. § 25-6-13 (1989); *see also Baldwin v. Burton*, 850 P.2d 1188, 1192 n.9 (Utah 1993).

equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; [and] (j) the transfer occurred shortly before or shortly after a substantial debt was incurred . . . .

Utah Code Ann. § 25-6-5(2) (1989).

Mr. Wade "wears these badges boldly." *United States v. Krause (In re Krause)*, 637 F.3d 1160, 1164 (10th Cir. 2011). Defendants admitted in the district court that "the badges of fraud are likely present for the transfers to the UBOs and the business trusts/entities." Aplt. App. Vol. VI at 1400. And they do not challenge here the district court's finding that Mr. Wade's "transfer of his interest [in the applicable properties] to the UBO's and business trusts was fraudulent," *id.* at 1462. Nor do they challenge the district court's finding that Mr. Wade's 2004 gift to Mrs. Wade, made shortly after his indictment for tax evasion and while he owed "millions in federal income taxes," *id.* at 1454, "was an intentional action to hinder, delay and defraud the United States," *id.* The record supports the district court's findings, and we affirm the district court's grant of summary judgment to the government on its fraudulent transfer claims.[4]

---

[4] Because we hold that the transfers of real property to the sham entities should be avoided, we need not address whether those entities held the properties as Mr. Wade's nominee. We likewise need not address whether Mr. Wade's transfer of his interests in the entities to Mrs. Wade was legally effective in light of our holding that the transfer should avoided.

## C. IRS Liens

Where, as here, a person fails to pay a tax after a demand, the internal revenue code automatically imposes a lien "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Defendants argue that the liens imposed by 26 U.S.C. § 6321 did not attach to the parcels transferred to the sham entities in 1992–2001 because Mr. Wade no longer owned the properties or any interests in the entities at the time the liens sprang to life in 2006 and later years.

Since we hold that the transfers of real property to the sham entities should be set aside as fraudulent, we view each of Mr. Wade's interests in the transferred properties as a "right to property" that is subject to attachment under 26 U.S.C. § 6321. *See, e.g.*, *Krause*, 637 F.3d at 1166 ("[T]he terms 'property' and 'rights to property' for purposes of federal law under § 6321 embrace not only rights or interest with exchangeable value that the taxpayer holds formal legal title to, but also those that the taxpayer (as here) is found under state law to have fraudulently conveyed to a nominee.").[5] Defendants explained the logic behind this holding to the district court: "[I]f the transfers to the UBO's, or the later transfers in 2001 to the business trusts/entities, were set aside as fraudulent, the 20 Subject Properties would simply be . . . held again by Stan [Wade] individually after 2001 (or however title

---

[5] Since we also affirm the district court's finding that Mr. Wade's transfer of his interests in the sham entities to Mrs. Wade should be set aside as a fraudulent transfer, the government's liens attached to his rights in those entities for the same reason.

was held by him and/or Janet [Wade] before the transfers)." Aplt. App. Vol. VI at 1398.

## IV. Conclusion

The district court's grant of summary judgment to the United States is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge